Carl CLAUSEN *v.* STATE of Arkansas

CA CR 94-571                                901 S.W.2d 35

Court of Appeals of Arkansas
Division I
Opinion delivered July 5, 1995

*A. Wayne Davis*, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Asst. Att'y Gen., for appellee.

JOHN E. JENNINGS, Chief Judge. Carl Clausen was charged in Independence County Circuit Court with battery of his three-year-old stepdaughter. He was found guilty by a jury of battery in the second degree and sentenced by the court to two years imprisonment and a fine of $1,000.00. Clausen's conviction rested largely on the testimony of Dr. Brock Allen, who testified that the child told him during his examination of her that appellant had caused her injury. The circuit judge found at trial that the child was not competent to testify.

For reversal Clausen contends that the trial court erred in admitting the doctor's testimony under Ark. R. Evid. 803(4) and that the admission of the doctor's testimony violated appellant's rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution. We find no error and affirm.

Over appellant's objection, Dr. Allen, an emergency room physician in Batesville, testified:

On March 17, 1993 I was on duty at White River Medical Center emergency room. On that date, I conducted an examination of Samantha Johnson. State's Exhibit #23 is a copy of my record of my examination of Samantha Johnson. When I examined Samantha I saw that she had numerous bruises on different portions of her body and different stages of healing. When you first sustain a bruise usually it will be in a bluish color and as it ages it will become more brown, so some of these bruises were new and some of them were old, and they were on various parts of her body, and after examining her I felt that her injuries were consistent with possible child abuse. State's Exhibit #5 depicts Samantha Johnson's ear and an abrasion consistent with what I've seen due to cigarettes in the past, on other children. State's Exhibit #6 depicts Samantha Johnson's back and there is a browning portion up there, and then on the buttocks there's some fresher, bluer, deeper marks, and down on the leg appears to be some fresher marks. Brown areas are older in nature. Bluer marks are from a more recent injury. Normally, a bruise dissipates within 21 days. She had bruises consistent with injuries that had occurred at different stages, at different days. These bluer bruises were probably within a week of age and these older bruises, the brownish looking ones, were at least 14 to 21 days in age. Samantha Johnson struck me as being a very bright three year old and answered questions very appropriately. I was fearful that she may be very withdrawn, but she was able to answer questions as I directed toward her, and was very willing to do so. After I completed my examination of this child, I asked the child who caused these injuries to her.

. . . .

In making a diagnosis and a determination in any child abuse case, it is part of my procedure and diagnosis to ask the victim who the perpetrator was. The way that I always ask this is I try to ask this question openly, and I said can you tell me what happened. And then she told me at that point that she was hit with a stick by Carl. And that's what she told me. She also indicated that she was whipped on several occasions. She stated that the injuries she had on her body were done to her by Carl.

■ The circuit judge admitted this evidence under Rule 803(4) of the Arkansas Rules of Evidence:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Appellant argues that the testimony of the doctor was inadmissible under the general principles that we stated in *Huls* v. *State*, 27 Ark. App. 242, 770 S.W.2d 160 (1989). In *Huls* we quoted from *United States* v. *Renville*, 779 F.2d 430 (8th Cir. 1985), with approval:

> Statements of identity seldom are made to promote effective treatment; the patient has no sincere desire to frankly account for fault because it is generally irrelevant to an anticipated course of treatment. Additionally, physicians rarely have any reason to rely on statements of identity in treating or diagnosing a patient. The statements are simply irrelevant in the calculus of devising a program of effective treatment.

*Huls*, 27 Ark. App. at 246.

■■ The Court in *Renville*, however, recognized an exception to the general rule that a declarant's statements disclosing the identity of the person said to be responsible for his injuries is inadmissible:

> We believe that a statement by a child abuse victim that the abuser is a member of the victim's immediate household presents a sufficiently different case than that envisaged by the drafters of Rule 803(4) that it should not fall under the general rule. Statements by a child abuse victim to a physician during an examination that the abuser is a member of the victim's immediate household *are* reasonably pertinent to treatment. [Emphasis in original.]

*Renville*, 779 F.2d at 436. In *Stallnacker* v. *State*, 19 Ark. App. 9, 715 S.W.2d 883 (1986), we expressly approved the exception stated in *Renville* and agreed with the Eighth Circuit's stated rationale for the exception. *See Stallnacker*, 19 Ark. App. at 11,

12. McCormick's appraisal is not at variance with the holdings in *Renville* and *Stallnacker*. "The test for admissibility is whether the subject matter of the statements is reasonably pertinent to diagnosis or treatment — an apparently objective standard. Descriptions of cause are similarly allowed if they are medically pertinent, but statements of fault are unlikely to qualify." John W. Strong, *McCormick on Evidence* § 277 at 489 (4th ed. 1992).

■ Appellant attempts to distinguish *Stallnacker* on the basis that, unlike the situation in *Stallnacker*, the victim in the case at bar had been interviewed by two social workers before the child saw Dr. Allen. We do not agree that this is a valid distinction. Compare *White* v. *Illinois*, 502 U.S. 346 (1992). We hold that the trial court did not err in admitting the doctor's testimony under Rule 803(4).

Appellant's second argument is that the admission of Dr. Allen's testimony violated his right under the Sixth Amendment of the United States Constitution, and under the equivalent provision of the Arkansas Constitution, to be confronted with the witnesses against him.

In *Idaho* v. *Wright*, 497 U.S. 805 (1990), the United States Supreme Court affirmed the Idaho Supreme Court's reversal of a trial court's admission of testimony by a doctor concerning statements made by a 2 1/2-year-old child as to sexual abuse. The doctor's statement was admitted by the trial court under a general residual hearsay exception provided for in the Idaho Rules of Evidence. The United States Supreme Court specifically held that the supreme court of Idaho had "properly focused on the presumptive unreliability of out-of-court statements and on the suggestive manner in which Dr. Jambura conducted the interview."

■■ The Court in *Wright* said that a statement may pass muster under the Confrontation Clause in either of two ways: where the hearsay statement falls within a firmly rooted hearsay exception or where it is supported by a showing of particularized guarantees of trustworthiness, citing *Ohio* v. *Roberts*, 448 U.S. 56 (1980). The Court also approved a number of factors that other courts had considered in determining whether hearsay statements by a child witness in child sexual abuse cases are reliable. Those considerations include, (1) spontaneity and consistent rep-

etition; (2) mental state of the declarant; (3) use of terminology unexpected of a child of similar age; (4) lack of motive to fabricate. *Wright*, 497 U.S. at 821. The Court also made it clear that these factors are not exclusive. Also see generally *Smith* v. *State*, 303 Ark. 524, 798 S.W.2d 94 (1990); *George* v. *State*, 306 Ark. 360, 813 S.W.2d 792 (1991).

There are two important differences between *Idaho* v. *Wright* and the case at bar. First, the doctor's testimony in *Wright* was admitted under the residual hearsay exception, not the exception for statements for the purposes of medical diagnosis or treatment. Second, Dr. Allen's testimony describing his manner of questioning the child was not at all like the manner of questioning by the doctor in the *Wright* case, which the United States Supreme Court set forth at length. *See Idaho* v. *Wright*, 497 U.S. at 810 and 811.

Is a statement made for purposes of medical diagnosis or treatment a "firmly rooted hearsay exception"? The decision in *White* v. *Illinois*, 502 U.S. 346 (1992), indicates that it is. Wigmore said that the exception rested chiefly on an opinion of Lord Ellenborough in *Aveson* v. *Kinnaird*, 6 East 188 (1805). 6 Wigmore, *Evidence* § 1714 (Tillers rev. 1983). We recognize that the court in *Ring* v. *Erickson*, 983 F.2d 818 (8th Cir. 1992), held that this particular application of the exception is not "firmly rooted." *But see United States* v. *Barrett*, 8 F.3d 1296 (8th Cir. 1993). Nevertheless the child in *White* v. *Illinois* was four years old and, in that context, the Supreme Court appears to have treated this application of the exception as "firmly rooted."

■ Under the circumstances presented we have also considered the illustrative factors set forth by the Court in *Idaho* v. *Wright*. In the case at bar the child's statements appear to be spontaneous and consistent. There is no use of terminology unexpected of a child of her age, and there is no evidence of any motive to fabricate. We conclude that the trial court's admission of Dr. Allen's testimony did not violate appellant's rights under the Confrontation Clause of the Sixth Amendment.

Affirmed.

ROBBINS and ROGERS, JJ., agree.