IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 7, 2006

## STATE OF TENNESSEE v. JAMES OTIS BUTLER

**Appeal from the Circuit Court for Gibson County**
**No. 7143    Clayburn Peeples, Judge**

---

**No. W2006-01300-CCA-R3-CD  - Filed December 28, 2006**

---

The appellant, James Otis Butler, pled guilty to one count of delivery of over .5 grams of cocaine. As a result, the trial court imposed an eight-year sentence, but ordered the appellant to serve the sentence on probation. Subsequently, several probation violation warrants were issued against the appellant. The trial court held a hearing, at which the appellant was not represented by counsel, and revoked the appellant's probation. The trial court later rescinded that order and held a second hearing after appointment of counsel. After the second hearing, the trial court again revoked the appellant's probation and ordered him to serve the remainder of his sentence in incarceration. The appellant argues on appeal that the trial court violated his due process rights by failing to issue written findings of fact, failing to allow counsel to argue on his behalf at the probation revocation hearing, and failing to consider the appellant's drug and alcohol treatment. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Linda L. Moore, Assistant Public Defender, Trenton, Tennessee, for the appellant, James Otis Butler.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; and Garry Brown, District Attorney General, for the appellee, State of Tennessee.

## OPINION

In December of 2003, the appellant pled guilty to one count of delivery of over .5 grams of cocaine. As a result, the appellant received an eight-year sentence. The trial court suspended the sentence and placed the appellant on probation.

On December 7 and December 19, 2005, probation revocation warrants were issued against the appellant, alleging that the appellant had failed to abide by the laws of Tennessee by being charged with disorderly conduct.[1]

At a hearing on December 21, 2005, the trial court revoked the appellant's probation after the appellant's probation officer testified to the violation. The appellant was not represented by counsel at that hearing. Subsequently, the trial court rescinded that order after reaching the conclusion that the appellant did not understand the nature of the proceedings. A second hearing was held on March 20, 2006. The appellant was represented by counsel. At that hearing, the appellant's probation officer, Marty Travis, testified that since the guilty plea in December of 2003, the appellant had been convicted of nineteen bad check charges, had four failure to appear charges, and had been convicted of disorderly conduct. According to Mr. Travis, the appellant admitted to the disorderly conduct charge and sought drug and alcohol treatment. The appellant told the trial court that what happened was a "misunderstanding" and that he would be "dead in six months" if he had to go back to jail. The trial court revoked the appellant's probation at the conclusion of the hearing.

## Analysis

On appeal, the appellant argues that the trial court violated the appellant's due process rights at the probation violation hearing by not considering the appellant's "drug and alcohol abuse and mental confusion, by not stating any reasons for revoking [appellant's] probation, and by not allowing defense counsel to make any statement on [appellant's] behalf before ruling on th[e] matter." The State counters that the trial court properly revoked the appellant's probation.

A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the person has violated a condition of probation. Tenn. Code Ann. § 40-35-310 & -311. After finding a violation of probation and determining that probation should be revoked, a trial judge can: (1) order the defendant to serve the sentence in incarceration; (2) cause execution of the judgment as it was originally entered, or, in other words, begin the probationary sentence anew; or (3) extend the probationary period for up to two years. See Tenn. Code Ann. §§ 40-35-308(c) & -311(e); State v. Hunter, 1 S.W.3d 643, 647-48 (Tenn.1999). The decision to revoke probation rests within the sound discretion of the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Revocation of probation and a community corrections sentence is subject to an abuse of discretion standard of review, rather than a de novo standard. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). An abuse of discretion is shown if the record is devoid of substantial evidence to support the conclusion that a violation of probation has occurred. Id. The evidence at the revocation hearing need only show that the trial court exercised a conscientious and intelligent judgment in making its decision. State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995). Further, "[i]t is well established that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse

---

[1] The revocation warrants also indicated that previous warrants had been issued against the appellant on December 2, 2005, October 6, 2005, and October 29, 2005. Those warrants do not appear in the record.

of that discretion." State v. McLeod, 937 S.W.2d 867, 871 (Tenn. 1996). Moreover, a defendant who is already on probation is not entitled to an additional grant of probation or some other form of alternative sentencing. State v. James Cravens, No. M2002-01216-CCA-R3-CD, 2003 WL 22282174, at *2 (Tenn. Crim. App., at Nashville, Oct. 2, 2003), perm. app. denied (Tenn. Mar. 8, 2004).

The Tennessee Constitution, Article I, Section 9, and the United States Constitution, Sixth Amendment, prohibit proof of an essential element of a crime in a criminal prosecution by the admission of evidence that violates the right to confront and cross-examine adverse witnesses. State v. Henderson, 554 S.W.2d 117, 122 (Tenn. 1977); Pointer v. Texas, 380 U.S. 400, 403 (Tenn. 1965). However, because the issue in a probation revocation proceeding is not the guilt or innocence of the defendant, the right to confront and cross-examine adverse witnesses is not absolute and may be relaxed under certain circumstances. Both the Tennessee Supreme Court and the United States Supreme Court have recognized that "the full panoply of rights due a defendant" in criminal prosecutions do not apply to parole revocations. See Black v. Romano, 471 U.S. 606, 613 (1985) (stating that "the flexible, informal nature of the revocation hearing, . . . does not require the full panoply of procedural safeguards associated with criminal trial"); Bledsoe v. State, 387 S.W.2d 811, 814 (1965) (stating that "the defendant [in a probation revocation hearing] is not entitled to the same guarantees as a person who is not convicted and is merely on trial upon an accusation of crime"). However, since a probationer's conditional freedom from incarceration is at risk, he must be afforded due process in the revocation proceeding.

The United States Supreme Court set forth the minimum requirements of due process in probation proceedings in Gagnon v. Scarpelli, 411 U.S. 778 (1973). Those requirements include a conditional right to confront and cross-examine adverse witnesses. The Court stated:

[There must be] preliminary and final revocation hearings. At the preliminary hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decision-maker, and a written report of the hearing. Morrissey v. Brewer, 408 U.S. 471, 487, 92 S.Ct. 2593, 2603, 33 L.Ed.2d 484 (1972). The final hearing is a less summary one because the decision under consideration is the ultimate decision to revoke rather than a mere determination of probable cause, but the "minimum requirements of due process" include very similar elements: (a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revoking [probation or] parole.

Gagnon v. Scarpelli, 411 U.S. at 786 (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). This Court has also held that a defendant may not be subjected to a revocation upon evidence he had no opportunity to hear, test by cross-examination or refute by contrary evidence. See Stamps v. State, 614 S.W.2d 71, 74 (Tenn. Crim. App. 1980). The guarantee to confront and cross-examine adverse witnesses clearly establishes that some right to confrontation exists in revocation hearings, but the qualifying "good cause" language reflects the flexibility that marks probation revocation proceedings and suggests that the confrontation requirement will be relaxed in certain circumstances. See State v. Wade, 863 S.W.2d 406, 408 (Tenn. 1993).

As part of this procedural framework, the trial court must issue a statement setting forth the evidence and factors relied upon in making the determination to revoke probation. State v. Delp, 614 S.W.2d 395, 397 (Tenn. Crim. App. 1980). Although the trial court's findings may be written or oral, a statement in some form must be made. Id. Thus, the hearing process envisioned in Gagnon affords the "minimum requirements of due process" so as to justly resolve contested issues and disputed facts. See Morrissey, 408 U.S. at 490 ("If it is determined that [the appellant's] admitted parole [probation] violations . . . are found to be reasonable grounds for revoking parole [probation] under state standards, that would end the matter."). The purpose of the hearing is "to determine whether there is probable cause to believe [that the appellant] has committed a parole [probation] violation." Id. at 486-87.

After hearing about the appellant's violations from the probation officer, the trial court commented, "I'm not going to reinstate his probation. I'm going to order him to serve his entire sentence." Then, in a written order, the trial court made the following findings:

> On December 21, 2005, the [appellant] admitted that he had incurred new charges, and the Court revoked the [appellant's ] probation. The [appellant] suffers from a chronic mental condition and was visually upset and confused regarding the Court's order. Therefore, the Court stayed the Order and set a hearing on the State's petition to violate [appellant's] revocation [sic].
>
> The [appellant's] probation officer provided the Court with a list of the [appellant's] new charges and the Court found that the [appellant] had violated the terms of his probation, revoked [appellant's] probation and Ordered that the [appellant] be placed in the custody of the Tennessee Department of Corrections . . . .

After hearing evidence from the probation officer as to the additional arrests and hearing the appellant admit to violating his probation, although claiming that it was a misunderstanding, no disputed facts or contested issues remained to be resolved through additional witnesses. Accordingly, we determine that the appellant's due process rights were not violated by the trial court. Once the trial court was informed that the appellant admitted to the facts constituting the violation, the trial court was not required to proceed further. See Blackwell v. State, 546 S.W.2d 828, 831 (Tenn. Crim. App. 1976); State v. Jacquece Fitzgerald, No. M2004-02441-CCA-R3-CD, 2005 WL 1353303 (Tenn. Crim. App. June 8, 2005) (determining that where defendant admitted probation

violation, the process ends and no due process violation occurs when the trial court refuses to hear additional evidence). Accordingly, we affirm the judgment of the trial court.

<u>Conclusion</u>

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE