IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 27, 2012

**STATE OF TENNESSEE v. MICHAEL EUGENE RUTHERFORD**

**Appeal from the Criminal Court for Knox County**
**No. 92367     Bob R. McGee, Judge**

**No. E2011-02409-CCA-R3-CD - Filed November 8, 2012**

The Defendant, Michael Eugene Rutherford, appeals the Knox County Criminal Court's order revoking his probation for aggravated burglary, a Class C felony, and ordering his five-year sentence into execution. On appeal, the Defendant contends that (1) the evidence is insufficient to revoke his probation, (2) there is new evidence related to testimony relied upon by the trial court in revoking his probation, (3) the trial court erred by allowing the victim of the Defendant's new theft charge to testify at the revocation hearing, and (4) the court erred by insufficiently weighing his good behavior. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Alexander Brown, Knoxville, Tennessee, for the appellant, Michael Eugene Rutherford.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Randall E. Nichols, District Attorney General; and Leon Franks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant pleaded guilty on November 6, 2009, to aggravated burglary and received a five-year suspended sentence, with credit given for time served, and the remainder to be served on enhanced probation. On January 12, 2010, a probation violation warrant was issued alleging that the Defendant was arrested on new criminal charges, violated his curfew, failed to report as instructed, and failed to pay fees and present verification of court cost payments. On May 24, 2010, an amended warrant was issued alleging that the Defendant's

whereabouts were unknown, that he failed to complete Jellinek rehabilitation program, and that he failed to contact his probation officer as required. On October 18, 2011, a second amended warrant was issued alleging that the Defendant violated his curfew and tested positive for cocaine. On October 26, 2011, a third amended warrant was issued alleging that the Defendant had been arrested on a new theft charge.

At the revocation hearing, Charles Lynch testified that he had known the Defendant for the Defendant's entire life and that the Defendant worked at his school bus company periodically for five to seven years. He said that an audit of his company's fuel invoices showed charges totaling $1500 for gasoline but that buses only used diesel. He said his investigation showed that two of the company credit cards were used to buy gasoline. He said that he called the police and that the police found a video recording of the Defendant's filling four cars with gasoline and paying for the gasoline with the company credit cards.

Mr. Lynch testified that he reviewed a video recording showing the Defendant's taking one of the school buses from the company parking lot at 3:00 a.m. to a Pilot convenience store on Rutledge Pike. He said the Defendant parked the bus in the Pilot parking lot, got out of the bus, walked to a white car, and pumped gas into the car. He said the Defendant also pumped gas into two trucks. He said the Defendant "offer[ed] to fill up their cars for whatever amount of money and [took] the cash. . . ." He said that after he reviewed the recording, he obtained a warrant for the Defendant's arrest.

On cross-examination, Mr. Lynch testified that he took out a warrant for the Defendant's arrest because the Defendant lied to him. When asked if he wanted the Defendant to go to prison, Mr. Lynch said that he did not know if anything was going to help the Defendant because the Defendant had been in jail and in prison before this incident. He said the Defendant had "an ability to convince you of things that you know that's not right." He said the Defendant convinced him that the Defendant did not steal from him until he saw the video recording. He said the Defendant was deceptive, and he denied seeing an improvement in the Defendant after being placed on his current probation.

Probation Officer Lisa Mooneyham testified that she had supervised the Defendant's probation since November 6, 2009. She said she filed the October 10, 2011 probation violation report because the Defendant tested positive for cocaine and violated his curfew. She said that the Defendant had a 6:00 p.m. curfew and that he was not home at 8:45 p.m. She said that she spoke to the Defendant earlier in the day and that he did not mention having to work late. She said that she went to the Defendant's home at 8:45 p.m. for a curfew check and that he was not home. She said she told the Defendant's fiancé to tell the Defendant to call her. She said that the Defendant called her at 11:00 p.m. and said that he had been working late. She did not believe the Defendant and told him to report to her office the next

morning. She said that the Defendant reported as requested, that she gave him a drug test, and that he tested positive for cocaine. The Defendant denied using cocaine, but the laboratory analysis showed 2000 nanograms of cocaine in a diluted sample. She said this was a large amount of cocaine in a diluted sample.

Ms. Mooneyham testified that she discovered the new theft charge on October 19, 2011, and that she filed an amended warrant. She said the Defendant had several previous probation violations, including arrests for driving under the influence (DUI), driving on a suspended license, theft, and being under the influence of an intoxicant. She said the Defendant previously absconded from Jellinek twice. She said that the Defendant was released from the program to attend court, that the Defendant was told to report back to Jellinek that night, and that the Defendant failed to return. She said the Defendant violated the rules of the rehabilitation program and was discharged from the program. She said the Defendant was later arrested and returned to Jellinek. She said that in 2010, the Defendant was arrested for misdemeanor drug possession, violated an order of protection, and violated conditions regarding curfew and no alcohol. She said the Defendant had not paid court costs for some time. She said that when the Defendant first received probation, he brought her receipts showing he had paid court costs.

Ms. Mooneyham testified that she "tried everything under the sun" to get the Defendant to comply with the conditions of his probation, including having the Defendant call her nightly and referring him to community corrections. She said the Defendant attended Narcotics Anonymous and Alcoholics Anonymous for a period of time and graduated from community corrections' "A&D One" program while continuing to use cocaine.

On cross-examination, Ms. Mooneyham testified that the Defendant had not paid the fees in full for the DUI conviction but that the Defendant and his fiancé struggled financially since his fiancé lost her job. She said the Defendant had to pay child support and could not pay anything toward his fees. She denied drug testing the Defendant regularly and said she tested him only when she felt it was needed. She said the Defendant's missing curfew led her to believe the Defendant had been drinking or using drugs. She said that the Defendant had been drinking when he violated his curfew in January 2010 and that between June 6, 2010, and October 10, 2011, the Defendant complied with his curfew and had negative drug tests.

The Defendant addressed the court and stated that he did not want to make excuses for his actions. He said that his rehabilitation classes told him there was a ninety-nine percent probability of relapse and that he should learn from it. He stated that this was his first relapse and that he hoped it was the last. He said he did not want to give up on himself

or his family. He said that since his fiancé lost her job, he struggled to survive and that the stress affected him.

The Defendant admitted taking the company credit card and lying to Mr. Lynch. He denied spending $1500 for gasoline but said he would repay Mr. Lynch to earn Mr. Lynch's respect. He admitted spending only "a couple hundred dollars." He said he did not comply with his probation and go though "every little hoop" just to return to prison because he used cocaine once. He said he would do anything required of him if the court allowed him to continue his probation.

The trial court revoked the Defendant's probation and ordered him to serve the remainder of his sentence in confinement with credit for time served. The court stated that its decision was not based on one night or one isolated event. The court noted the presentence report concluded that the Defendant was a "high risk candidate" for probation with a history of unemployment. The court stated that the Defendant received judicial diversion for his first theft arrest in 1998. It noted the Defendant had been arrested on theft-related offenses eight times and convicted four times since 1998. The court said that the Defendant first received probation in 1999, that his probation was revoked two months later, that he was placed on community corrections, and that his community corrections was revoked. The Defendant then spent time in prison and boot camp, was released to probation, and had his probation revoked. The court found that the Defendant had a history of criminal conduct.

The trial court stated that the Defendant pleaded guilty to aggravated burglary on August 14, 2009, and that four months later, the Defendant violated his probation by violating his curfew and by being in possession of drugs. The court stated that in May 2010, the Defendant failed to return to Jellinek and that in June 2010, he was arrested for DUI. The court found that after the DUI charge, the Defendant appeared to be doing well until the theft charge on October 18, 2011. The court said a probation report showed the Defendant was doing well on April 15, 2011.

The trial court found that the Defendant violated his curfew and tested positive for cocaine, although the Defendant denied using cocaine. The court stated that had the Defendant not violated his probation again by stealing the company credit cards, the court would have found the Defendant had "one bad night." The court placed significant emphasis on the Defendant's stealing from another person again and said it could "not leave [the Defendant] on probation while . . . stealing from people." The court said the circumstances "demanded" sentencing the Defendant to prison. This appeal followed.

-4-

# I

The Defendant contends that the evidence is insufficient to revoke his probation. He argues that the State failed to establish probable cause to believe the Defendant committed the alleged theft because there was no physical evidence to support the allegation. The State responds that the evidence was sufficient to revoke the Defendant's probation. We agree with the State.

A trial court may revoke probation upon its finding by a preponderance of the evidence that a violation of the conditions of probation has occurred. T.C.A. § 40-35-311(e) (2010). "In probation revocation hearings, the credibility of witnesses is to be determined by the trial judge." State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991) (citing Carver v. State, 570 S.W.2d 872 (Tenn. Crim. App. 1978)). If a trial court revokes a defendant's probation, its options include ordering confinement, ordering the sentence into execution as originally entered, returning the defendant to probation on modified conditions as appropriate, or extending the defendant's period of probation by up to two years. T.C.A. §§ 40-35-308(a), (c), -310 (2010); see State v. Hunter, 1 S.W.3d 643, 648 (Tenn. 1999). The judgment of the trial court in a revocation proceeding will not be disturbed on appeal unless there has been an abuse of discretion. See State v. Williamson, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981). In order for this court to find an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001).

Here, the record contains sufficient proof that the Defendant violated the conditions of his probation. The Defendant admitted during his allocution that he used cocaine and that he stole Mr. Lynch's company credit card to buy gasoline for others. Although the Defendant disputed the amount of the theft, he admitted he stole the credit card. Ms. Mooneyham testified that she performed a curfew check at the Defendant's home on October 10, 2011, two hours and forty-five minutes after his curfew, and that the Defendant was not home. Furthermore, the Defendant failed to report his October 2011 theft arrest to Ms. Mooneyham. These actions constituted sufficient proof to support the court's finding that the Defendant violated his probation. The record reflects the trial court properly found that the Defendant violated his probation and that it exercised proper discretion in revoking the Defendant's probation and ordering the Defendant's sentence into execution.

# II

The Defendant contends that since the revocation hearing, a fellow inmate confessed to stealing Mr. Lynch's company credit cards. Although he fails to state an argument, we believe his point is that another person's confession entitles him to relief from the trial

court's order revoking his probation. The State responds the Defendant is not entitled to relief. We agree with the State.

In his brief, the Defendant states that Charles Brandon Smith, a fellow inmate, "bragged" to the Defendant about stealing blankets, batteries, and "money cards" from Mr. Lynch's bus company. The Defendant claims that Mr. Smith told him that Mr. Smith's mother sold the stolen items. The Defendant only provides basic facts in his brief and fails to present an argument or cite to any legal authority stating he is entitled to relief. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived by this court."); see also T.R.A.P 27(a)(7)(A) (requiring the appellant's brief include his contentions and "the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record"). These factual assertions were not presented to the trial court. This court "may consider those facts established by the evidence in the trial court and set forth in the record and any additional facts that . . . are considered pursuant to Rule 14." T.R.A.P. 13(c). Consideration of post-judgment facts is within this court's sound discretion, and "generally . . . extend only to those facts, capable of ready demonstration, affecting the positions of the parties. . . ." T.R.A.P. 14(a). The facts presented in the Defendant's brief are post-judgment facts not capable of ready demonstration. The record shows, though, that the Defendant admitted to taking Mr. Lynch's company credit card and charging "a couple hundred dollars." The Defendant also violated his curfew and used cocaine. We conclude that the Defendant is not entitled to relief.

## III

The Defendant contends that the trial court erred by allowing Mr. Lynch to testify at the revocation hearing. He argues that because Mr. Lynch testified that he knew the Defendant stole the credit card but that he could not prove it, there was no evidence implicating the Defendant in the theft.

As a preliminary matter, we note that the Defendant fails to make any citations to the record. See Tenn. Ct. Crim. App. R. 10(b); T.R.A.P. 27(a)(7)(A). Additionally, the Defendant failed to object to Mr. Lynch's testimony at the revocation hearing. See Tenn. R. Evid. 103; T.R.A.P. 36(a) (stating that granting of relief to a party is not required when the party "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error"). In any event, the record shows that Mr. Lynch reviewed a video recording showing the Defendant's taking one of the school buses from the company parking lot at 3:00 a.m. to a Pilot convenience store. He saw the Defendant park the bus in the Pilot parking lot, get out of the bus, walk to a white car, and pump gas into the car. He said he saw the Defendant pump gas into two trucks. Mr. Lynch said that the Defendant denied stealing

the credit cards and that he believed the Defendant until he saw the recording.

We conclude that the trial court did not err by allowing Mr. Lynch to testify. In a probation revocation hearing, a trial court has "broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of discretion." State v. McLeod, 937 S.W.2d 867, 871 (Tenn. 1996). Also, the strict rules of evidence do not apply in revocation hearings. See Barker v. State, 483 S.W.2d 586, 589 (Tenn. Crim. App. 1972). The Defendant is not entitled to relief.

**IV**

The Defendant contends that the trial court erred by insufficiently weighing his good behavior while on probation in accordance with the general sentencing principles. He argues that with the exception of "a few occasions," he complied with the requirements of his probation regarding curfew and no drugs. He requests that this court review his contention without a presumption of correctness under Tennessee Code Annotated section 40-35-401(d) (2010). The State contends that the trial court properly considered all the circumstances in revoking the Defendant's probation and argues Code section 40-35-401(d) does not apply. We agree with the State.

Tennessee Code Annotated section 40-35-401(d) addresses the appeal of a sentence and states, in relevant part,

> When reviewing sentencing issues raised pursuant to . . the granting or denial of probation . . . , the appellate court shall conduct a de novo review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct.

The Defendant's reliance on Code section 40-35-401(d) is misplaced. The present appeal focuses on the trial court's order revoking the Defendant's probation, not the trial court's granting or denying probation. This court has stated that "while consideration of sentencing principles is mandatory in determining a defendant's original sentence, 'reference to these principles is not necessary in determining the appropriate sanction following a revocation of probation.'" State v. Randy Tyrone Crawford, No. M2000-02358-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App. Aug. 7, 2001) (quoting State v. Howard Luroy Williamson, Jr., No. 02C01-9507-CC-00201 (Tenn. Crim. App. Sept. 30. 1996)).

In any event, the record shows the trial court considered the Defendant's good behavior after his DUI arrest in June 2010 and before his theft arrest in October 2011. The court also noted that the April 15, 2011 probation report showed the Defendant was doing well on probation. However, after the trial court found by a preponderance of the evidence that a probation violation occurred, the trial court had the authority to revoke the Defendant's probation and order his sentence into execution. See T.C.A. § 40-35-310 (2010). The Defendant is not entitled to relief.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE